UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In Re:
JAMES DALE FISCHER,                              Bankruptcy Court
a/k/a James Dale Fischer, Sr.,                   Case No. GG 03-06259
                                                 Chapter 7
             Debtor.                             Adversary Proceedings
_____/               No. 04-88447

JEFF A. MOYER, Chapter 7 Trustee,

             Plaintiff/Appellant,
                                                 File No. 1:05-CV-449
v.
                                                 HON. ROBERT HOLMES BELL
TINA ANN FROEMING,

             Defendant/Appellee.
_____/

## OPINION

This is an appeal from a decision of the Bankruptcy Court in favor of Appellee Tina Ann Froeming, which was delivered on the record on March 1, 2005. The underlying proceeding involved the trial of an adversary proceeding brought against Appellee by Appellant Trustee, seeking to avoid the Debtor James Dale Fischer's conveyance of property to Froeming by quit-claim deed recorded in June 2001. For the reasons that follow, I conclude the Bankruptcy Court erred in granting judgment for Appellee. Accordingly, the decision of the Bankruptcy Court is reversed.

**I.**

As both the parties and the Bankruptcy Court recognized, the facts of this case are highly unusual. No substantial disagreement exists as to the facts of the case. After hearing testimony, the Bankruptcy Court fully credited the testimony of Debtor and Appellee.

In issue is the effect of two separate quit-claim deeds executed by Debtor on September 28, 1998 and May 23, 2001. On September 28, 1998, Debtor signed a quit-claim deed conveying his interest in real property located at 2434 Winans in Ottawa County, Michigan to his daughter, Appellee Tina Ann Froeming. The conveyance was made for no consideration and was never recorded. Debtor testified that he decided to convey his property to his daughter after having been involved in a serious motorcycle accident in 1997. In making the transfer, he told his daughter that the conveyance was made for estate planning reasons only and that he would retain the right to live on the property during his life and would continue to maintain the property and pay the mortgage and taxes. She agreed to accept the deed on that understanding. After executing the deed, the debtor sent it to Appellee Froeming. No attorney was consulted about the 1998 deed.

Sometime thereafter, Debtor spoke with a friend, who counseled him that his unqualified conveyance of his entire property interest to his daughter was unwise. The friend warned that, in the absence of a recorded reservation of a life estate, Debtor would be at risk in the event that his daughter pre-deceased him, because the property could be sold from under him. As a consequence, Debtor consulted with an attorney to draft a quit-claim deed

that preserved a life interest. On May 23, 2001, Debtor signed the second quit-claim deed, which preserved his life estate, and the deed was recorded on June 4, 2001. Both Debtor and Appellee testified that they believed the first deed made Appellee the owner of the property. They viewed the second deed as merely a clarification of the understanding they previously had about the first deed.

During the period between the execution of the first and second deeds, Debtor invested some monies in an Arizona business owned by his son Jeffrey. Sometime in late 1998, he invested an initial sum of approximately $8,000.00. He believed he was buying stock in the enterprise. In 1999, he invested additional monies on the same understanding. Also in March 1999, Jeffrey asked and Debtor agreed to sign a special power of attorney that granted Jeffrey the limited power to execute in Debtor's name those documents necessary for the sale of the business and its assets. The power of attorney did not include the right to enter into additional debts on Debtor's behalf. On April 5, 1999, however, Jeffrey used the power of attorney to execute a chattel security agreement in his father's name. As the result of his son's various requests and demands, by May of 2001, Debtor's cash account had been reduced from approximately $40,000.00 to approximately $10,900.00. In addition, while Debtor's mortgage loan had been reduced from about $8,700.00 in 1998 to less than $600.00 in 2001, Debtor had taken a new signature loan for $2,500.00 for the benefit of his son, on which his son had committed to make the payments. That debt was delinquent in May 2001 because the son had failed to pay as agreed.

3

Jeffrey Fischer's Arizona business failed, and, on February 14, 2001, a lawsuit was filed by Von's Franchise Enterprises, Inc., the secured party under the chattel security agreement signed by Jeffrey in April 1999. Debtor and Jeffrey both were named in the action. Although Debtor did not remember precisely when he was served with the lawsuit, he did recall that he had been in his yard, wearing shorts but no shirt, and mowing his lawn. He guessed the date to have been in May 2001. Debtor testified that he did not believe he owed any monies to Von's because he had never been involved in running the company and had not agreed to any debt.

Debtor hired an attorney in Arizona and paid between $10,000.00 and $15,000.00 defending the case until 2002. On July 18, 2002, the Superior Court of Maricopa County, Arizona issued a ruling denying summary judgment to Von's and expressing doubt about Jeffrey Fischer's authority to bind Debtor under the circumstances of the transaction. At that point, Debtor's attorney demanded an additional $15,000 retainer to pursue the case through trial. Debtor could not pay the additional retainer and could not afford to continue to pursue his rights in Arizona. He defaulted in the case and a $132,881.60 judgment was entered against him on July 31, 2002. When Debtor filed for bankruptcy on May 14, 2003, the judgment was the principal debt listed in his petition.

On June 25, 2004, Appellant Trustee filed the instant adversary proceeding against Appellee Froeming, pursuant to 28 U.S.C. § 157(b)(2)(H), seeking to set aside the 2001 deed as a fraudulent conveyance based on either actual or constructive fraudulent intent. The

4

action specifically relied upon the incidents of fraud associated with the timing of the transfer in relation to the filing and service of the Arizona litigation. In response to the Trustee's complaint, Froeming provided a copy of the 1998 quit-claim deed which was never recorded. On October 26, 2004, the Trustee filed an amended complaint to include an additional claim to avoid the unrecorded 1998 transfer under MICH. COMP. LAWS § 565.29.

The Bankruptcy Court concluded that, as a matter of law, the 1998 deed was valid and transferred the title to the real property from Debtor to Appellee. The Trustee made no allegations that the 1998 transfer was fraudulent and the Bankruptcy Court so found. However, because the deed was not recorded, the transfer presumptively was subject to and subordinate to the interest of the Trustee, who attained the status of bona fide purchaser as of the date of the bankruptcy filing, May 14, 2003, pursuant to 11 U.S.C. § 544.

In reviewing the 2001 deed, the Bankruptcy Court concluded that the Trustee had both actual and constructive knowledge of the purported conveyance because it was recorded. The Court also concluded that the ostensible 2001 transfer was made for legitimate estate planning purposes, despite the existence of certain badges of a fraudulent conveyance, because the Court found the testimony of both the Debtor and the Appellee to be credible and compelling. The Court therefore rejected the claim of actual or constructive fraudulent conveyance. The Court concluded, however, that the 2001 deed was inoperable to transfer any interest in the property or to reserve the life estate because Debtor had no interest in the

property at the time of the purported transfer, having previously conveyed all of his interest to Appellee in 1998.

The Bankruptcy Court then addressed whether, although the Trustee lacked constructive knowledge of the 1998 deed because it was not recorded, the recorded 2001 deed gave him inquiry notice of Appellee's interest in the property. The Bankruptcy Judge held that, had he inquired of Appellee regarding her interest in the property, the Trustee would have discovered the existence of the 1998 deed. As a consequence, the Court determined that the Trustee, standing in the shoes of a bona fide purchaser, had notice of Appellee's interest sufficient to defeat his claim. The Trustee timely filed the instant appeal.

## II.

A district court has jurisdiction to hear an appeal from the final judgment of the bankruptcy court, pursuant to 28 U.S.C. § 158(a)(1); FED. R. BANKR. P. 8001. A district court, in reviewing the determinations of the bankruptcy court on a question of law, applies a *de novo* standard of review. *See* FED. R. BANKR. P. 8013; *Wesbanco Bank Barnesville v. Rafoth*, 106 F.3d 1255, 1259 (6th Cir. 1997). Findings of fact made by the bankruptcy court will not be set aside unless they are clearly erroneous. FED. R. BANKR. P. 8013. "When a question in the bankruptcy context involves a mixed question of law and fact, 'we must break it down into its constituent parts and apply the appropriate standard of review for each part.'" *In re American HomePatient, Inc.*, 420 F.3d 559, 563 (6th Cir. 2005) (quoting *Wesbanco*, 106 F.3d at 1259).

### III.

Appellant Trustee raises three issues: (1) whether the legally void 2001 deed is sufficient to impute constructive notice of an earlier, unrecorded interest in real property sufficient to defeat the Trustee's status as bona fide purchaser under 11 U.S.C. § 544; (2) whether a legally void deed can impute inquiry notice of a separate, earlier and unrecorded conveyance of real property sufficient to defeat the Trustee's status as bona fide purchaser; and (3) in the alternative, if the 2001 quit-claim deed is found to be operative, did it constitute a fraudulent conveyance within the meaning of 11 U.S.C. § 548 and MICH. COMP. LAWS § 531.29?

Before addressing the questions presented, the Court notes that the parties do not dispute the holding of the Bankruptcy Court that the 1998 deed was lawfully executed, witnessed, delivered and accepted by the Appellee. Therefore the deed was effective to lawfully transfer title in the property from Debtor to Appellee Froeming and was binding as between them. As a consequence, as of 1998, title to the property rested with Appellee. The parties further do not dispute that the 1998 deed was not recorded. In addition, the parties do not dispute that, because Debtor had transferred his interest to Froeming in the 1998 deed, he had no interest to convey in the 2001 deed. As a result, the 2001 deed, while properly recorded, was of no effect because it transferred no interest to Froeming.

As a result, the parties substantially agree that, absent constructive or inquiry notice of the earlier deed, the Trustee's interest as a bona fide purchaser under 11 U.S.C. § 544

would have priority over the 1998 deed. The crux of the parties' dispute, therefore, rests on the question of whether the recording of the inoperative 2001 deed was sufficient to provide either constructive or inquiry notice to the Trustee of the 1998 deed.

Section 544(a) of the Bankruptcy Code provides in relevant part as follows:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by:
>
> . . .
>
> (3) A bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3). State law determines the extent of the trustee's rights under § 544(a). *See Simon v. Chase Manhattan Bank (In re Zaptocky)*, 232 B.R. 76, 79 (6th Cir. BAP 1999) (citing *Owen-Ames-Kimball Co. v. Mich. Lithographing Co. (In re Mich. Lithographing Co.)*, 997 F.2d 1158, 1159 (6th Cir. 1993)). Under Michigan law, a bona fide purchaser for value takes free of prior unrecorded interests. MICH. COMP. LAWS § 565.29; *In re Wohlfeil*, 322 B.R. 302 (Bankr. E. D. Mich. 2005).

> Generally speaking, the essential elements of a "bona fide purchase" of land are the payment of valuable consideration, good faith, and the absence of any purpose to take unfair advantage of third persons, and absence of notice, actual or constructive, of the outstanding rights of others.

8

*Wohlfeil*, 322 B.R. at 304 (quoting 23 MICH. LAW & PRACTICE, Vendor and Vendee § 151 (1958)).

Courts previously have noted an apparent discrepancy between Michigan's requirement that a bona fide purchase entails an "absence of notice, actual or constructive, of the outstanding rights of others," and the language of 11 U.S.C. § 544(a)(3), which provides that the trustee's right is "without regard to any knowledge of the trustee or any creditor." *Wohlfeil*, 322 B.R. at 304 (citing *In re Perrin's Marine Sales, Inc.*, 63 B.R. 4 (Bankr. W.D. Mich. 1995)). The courts have reconciled the conflict by holding that "the 'knowledge' element of § 544(a) encompasses only the personal knowledge of the trustee or creditor, not constructive notice which may arise under 'applicable law' . . . ." *Id.* As a result, the trustee's interest as a bona fide purchaser is subject to the effects of constructive notice under state law. *Id.* at 305; *see also Fletcher Oil Co. v. Elm Lawn Cemetery Co. (In re Fletcher Oil Co., Inc.)*, 124 B.R. 501, 504 n.4 (Bankr. E.D. Mich. 1990).

The recording of a deed or other interest in property indisputably serves as constructive notice of such interest to all subsequent purchasers. *See Lynch v. Murphy*, 161 U.S. 247, 253 (1896); *Perrins Marine Sales*, 63 B.R. at 8. In addition, under Michigan law,

> A person is chargeable with constructive notice when, having the means of knowledge, he does not use them. If he has knowledge of such facts as would lead any honest man, using ordinary caution, to make further inquiries and does not make, but studiously avoids making, the obvious inquiries, he must be taken to have notice of those facts which, had he used ordinary diligence, would have been readily ascertained.

9

*Hudson v. O.&A. Elec. Co-op*, 52 N.W.2d 565, 567 (Mich. 1952), *quoted in Wohlfeil*, 322 B.R. at 305. Applying the doctrine, Michigan recognizes that, where someone other than the record owner is in open possession of the property, a bona fide purchaser may be deemed to have constructive notice of that person's potential interest in the property.[1] *See Fletcher Oil*, 124 B.R. at 504; *Perrin's Marine Sales*, 63 B.R. at 7-8; *Kastle v. Clemons*, 46 N.W.2d 450 (Mich. 1951); *Corey v. Smalley*, 64 N.W. 13 (Mich. 1895); *see also Hull v. Gafill Oil Co.*, 249 N.W. 24 (1933) (equally divided court). Such open possession also may be considered constructive notice or inquiry notice of the interest of someone other than the possessor whenever reasonable inquiry would have revealed that interest. *Fletcher Oil*, 124 B.R. at 504. Further, the Sixth Circuit, applying similar Kentucky law, has concluded that in circumstances in which a recorded mortgage was defectively acknowledged and therefore void, the recording of a contemporaneous subordination agreement referencing the improperly executed mortgage was sufficient to give a subsequent purchaser constructive

---

[1] Although Appellee asserts that constructive notice is limited to notice by recording, Michigan courts have referred interchangeably to the concept of "constructive" notice and "inquiry" notice in circumstances in which open possession is deemed sufficient constructive notice to impose upon a bona fide purchaser the duty of reasonable inquiry. *See, e.g., Fletcher Oil*, 124 B.R. at 504 (referring to open possession providing "constructive notice" of another's rights when reasonable inquiry would have revealed the interest); *Kastle v. Clemons*, 46 N.W.2d 450, 451 (Mich. 1951) ("Open, manifest and unequivocal possession of premises constitutes constructive notice of the rights of one in such possession as effectively as compliance with the recording law."); *Corey v. Smalley*, 64 N.W. 13, 14 (possession of land by a contract purchaser is constructive notice of his rights); *Spring v. Raymond*, 95 N.W. 1003 (Mich. 1903) (property occupied by tenant who was aware of change in property title served as constructive notice because "an inquiry of the tenant would undoubtedly have revealed" the property transfer).

notice of the existence of the mortgage. *See In re Vance*, 99 Fed. Appx. 25, 28 (6th Cir. 2004).

In the instant case, the Bankruptcy Judge concluded that Appellee Froeming became the fee owner upon the execution and acceptance of the 1998 deed. The court held, however, that the 1998 oral agreement between Debtor and Froeming concerning the Debtor's life estate interest was legally unenforceable under the statute of frauds. In addition, the court held that, ordinarily, because the 1998 deed was not recorded, the transfer would be subject to and subordinate to the interest of a bona fide purchaser for value, such as the Trustee. As previously noted, the court further held that the 2001 deed from Debtor to Froeming, which reserved a life estate, conveyed no actual property interest because the Debtor, having already transferred all of his interest by way of the 1998 deed to Froeming, had no interest to convey.

Neither party questions the Bankruptcy Court's determination that the 2001 deed conveyed no interest in the property because the Debtor had no interest to convey. Nor could they. Michigan courts routinely have held that a purported recorded interest is without effect when the transferor has no interest capable of being conveyed. *See Ernst v. Ernst*, 144 N.W. 513 (Mich. 1913) (quit-claim deed by party who holds with spouse as tenant in the entireties transfers no interest because one such tenant has no interest he or she can convey); *Beakley v. Robert*, 79 N.W. 193 (Mich. 1899) (second quit-claim deed issued after earlier quit-claim deed conveyed no interest because grantor had no interest to convey); *Hughes v. Jordan*, 76 N.W. 134, 135 (quit claim deed conveys only that interest the grantor possesses).

Nevertheless, the Bankruptcy Judge held that, while the 2001 deed transferred no actual property interest, its existence was sufficient to trigger inquiry notice on the part of the Trustee as to Froeming's interest in the property. The court further concluded that, had the Trustee made reasonable inquiry of Froeming about her interest in the property, he would have discovered the earlier deed. In reaching his determination, the Bankruptcy Judge acknowledged that the precise issue had not previously been decided by another court. The court further acknowledged that there existed no open and notorious possession by Appellee Froeming that would trigger constructive notice. In addition, the court found that the Trustee, as a bona fide purchaser, was not required to knock at the door and inquire of any resident seeking additional information of possible unrecorded property transfers. However, the Bankruptcy Judge concluded that where, as here, the 2001 deed purportedly conveyed an interest to Froeming, the Trustee would have had reason to inquire upon discovering that someone other than Froeming was residing at the property.

The Court disagrees with the Bankruptcy Judge's legal determination. The 2001 deed, as recorded, did not purport to quit-claim Debtor's entire property interest to Froeming. Instead, the recorded deed reflects a transfer of interest that specifically reserved a life estate for Debtor. As a result, the occupancy of the premises by Debtor was fully consistent with the deed of record, even though that deed was ultimately found to convey no interest. Occupancy also was fully consistent with the state of the recorded title before the filing of the 2001 deed, when Debtor was the title holder of record. Because, as the Bankruptcy Judge

12

held, the Trustee does not have a duty to inquire in every case, no duty should arise in the instant case. At the time the action was commenced, the Trustee had no basis for reasonably believing that the 2001 transfer with reserved life estate was anything other than what it purported to be.[2] Absolutely nothing about the 2001 deed – in relation to the actual occupancy of the property or otherwise – was in any way anomalous or provided a reason for inquiry by the Trustee. To hold the Trustee to inquiry notice on these facts would be to require the Trustee to make inquiry in every case, on the mere chance that the recorded deed was invalid because the owner of record had previously conveyed his interest in an unrecorded deed. Such a requirement would completely undermine the requirement of Michigan law that a deed be recorded in order to interfere with the claim of a subsequent bona fide purchaser for value. *See Nathan v. Barbera*, No. 95-4610, 1996 WL 446821, at *4 (Bankr. E.D. Mich. 1996) ("If Defendants' argument were to prevail here, the exception would swallow the rule, and a purchaser would be bound by any unrecorded transfer even though occupancy of the property suggested no reason to suspect such transfer and even where, as here, the transfer was intended to be kept secret.").

---

[2] Indeed, in the original complaint filed in the adversary proceeding, the Trustee challenged the 2001 deed solely on the ground that, based on the existence of certain badges of fraud, the deed was avoidable as a fraudulent transfer. Only after the Appellee answered the complaint and revealed the existence of the 1998 deed did the Trustee amend his complaint to raise the instant claim and to avoid the 1998 deed. Moreover, the revelation of facts subsequent to the commencement of the bankruptcy proceeding cannot interfere with the Trustee's status as bona fide purchaser, which arose at the time the proceedings commenced. *See* 11 U.S.C. § 544(a)(3).

Further, the reasoning of the Bankruptcy Judge breathes life into a deed that itself conveys no legal interest. Although the Michigan courts have not expressly addressed the circumstances in issue in the instant case, they regularly have held that a recorded but defective deed may not serve as constructive notice to subsequent purchasers for value. *See, e.g., Widdicomb Co. v. Card*, 187 N.W. 308, 310 (1922) ("That an instrument not executed so as to entitle it to record is not constructive notice to any one is elementary."); *Brown v. King*, 137 N.W. 729, 730-31 (Mich. 1912) (recorded quit-claim deed that was not entitled to be recorded could not serve as constructive notice to others); *Dohm v. Haskin*, 50 N.W. 108, 109 (Mich. 1891) (recorded but improperly acknowledged chattel mortgage that was not entitled to be recorded must be ignored and canceled); *Loomis v. Brush*, 36 Mich. 40 (1877) ("The deed being void, its record was no notice to any one of any possible equities between husband and wife. If such equities existed, they did not grow out of the deed, and were not embodied in it. To allow the record to be constructive notice in such a case, would be to make the recording of a void instrument more extensive in its operation than that of a valid one, which is only notice of what its terms show."); *Hall v. Redson*, 10 Mich. 21 (1862) ("[U]ntil some instrument having the effect to transfer the title has been duly proved in some way, no question of such notice can arise."); *Galpin v. Abbott*, 6 Mich. 17 (1858) (deed not entitled to be recorded, although recorded in fact, could not serve as notice of party's interest). *See also In re Biggs*, 377 F.3d 515 (6th Cir. 2004) (bankruptcy trustee obtained superior interest over prior recorded transfer where recorded instrument was improperly

14

acknowledged); *In re Vance*, 99 Fed. Appx. 25, 28 (6th Cir. 2004) ("In Kentucky, an improperly executed security interest that is recorded fails to provide constructive notice."). Because the 2001 deed was incapable of transferring any interest in the property, it cannot serve as notice that any interest was conveyed and cannot serve as sufficient notice to trigger further inquiry by the Trustee that any interest was conveyed. The Court therefore concludes that the Trustee may avoid the 1998 unrecorded deed.

Having fully agreed with the Bankruptcy Judge's unchallenged conclusion that the 2001 deed transferred no interest, the Court need not reach the Trustee's alternate claim that the purported transfer reflected in the 2001 deed was fraudulently made. Where no transfer has occurred, no transaction exists that could be deemed fraudulent.

## IV.

For the reasons stated herein, the decision of the Bankruptcy Court is reversed. An order consistent with this opinion will be entered.


Date:  October 20, 2005          /s/ Robert Holmes Bell
                                 ROBERT HOLMES BELL
                                 CHIEF UNITED STATES DISTRICT JUDGE

15